## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| G.T. by his Next Friend, CARLA ROLLA, | § | |
| and CARLA ROLLA, INDIVIDUALLY | § | |
| | § | |
| **PLAINTIFFS** | § | |
| | § | |
| vs. | § | **Civil Action No.** 1:17-cv-1127 |
| | § | |
| EPIC HEALTH SERVICES, | § | |
| | § | |
| **DEFENDANT.** | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES G.T. by his next friend ("b/n/f") Carla Rolla, AND Carla Rolla, Individually (collectively termed Plaintiffs herein), and brings this their *"Plaintiffs' Original Complaint,"* against *Epic Health* Services (Defendant herein) and would respectfully show this Court the following:

### I. BRIEF REVIEW OF THE CASE

1.   G.T. was born on July 4, 2003. He is now fourteen (14) years old. When he just eleven (11) years old he experienced a major hemorrhage that left him significantly disabled. He is considered a person with a disability as contemplated by the Section 504 of the *Rehabilitation Act of 1973* ("Rehabilitation Act"), 29 U.S.C. §794. Due his disabling conditions (all as more specifically described below) G.T. requires specialized medical, nursing and home health services, which were provided by Epic Health Services.

2.   In addition, because of his inability to communicate, ambulate on his own, eat and drink normally (he requires a tube) or take care of his own personal needs, G.T. would not surprisingly, sometimes be frustrated with the personal care he received by the home health provider and would forcefully attempt to push the person away, reject the services or both. This problem was well known to Epic Health Services personnel but they never sought out a psychologist or other mental health professional to assess G.T.'s need for a behavioral modification plan or provide one. Nor did they ever provide a healthcare provider

sufficiently skilled to serve and accommodate G.T.'s unique and individualized needs.

3.    Not surprisingly, these and other failures came to a head when they sent Ben States Oliver, a Licensed Vocational Nurse, who did not have the experience to work with a young person like G.T., who did not receive the necessary training to work with a young person like G.T. and did not receive the necessary supervision to work with a young person like G.T., into the home to work with G.T.

4.    On one occasion G.T. reacted to the care Oliver was trying to provide, and as a video shows, Oliver was clearly incapable of dealing with G.T. He became frustrated because of that inability and struck back at G.T., injuring him in the eye.

5.    This failure, among numerous others, whether viewed individually or together, reflect gross deviations in the operative standards of care for such a hospital and professional staff, that were both the producing and proximate cause of the injuries G.T. experienced. As such, Plaintiffs file suit against Defendant for violations of his civil rights pursuant to Rehabilitation Act, state law claims pursuant to Chapter 74 of the Texas Civil Practices & Remedies Code; Chapter 17 of the Texas Business & Commerce Code commonly known as Texas Deceptive Trade Practices Act, as well various common law claims. For such violations Plaintiff seeks damages, compensation and attorneys fees and costs for the injuries G.T. experienced, all as more fully discussed below.

## II. JURISDICTION

6.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and 1343 because the matters in controversy arise under the laws of the United States.

7.    Furthermore, this Court has supplemental jurisdiction over various state and common law claims pursuant to 28 U.S.C. §1367.

8.    Last, this Court has jurisdiction to award attorney's fees and costs to the Plaintiff under the Rehabilitation Act, pursuant to 29 U.S.C. §794a pursuant to 42 U.S.C. §2000d et seq., and the Texas Deceptive Trade Practices Act.

### III. VENUE

9. Under 28 U.S.C. §1391, venue is proper before this Court because the Defendant operates a business in the Western District of Texas, Austin Division.

### IV. PARTIES

10. As noted above G.T. is a minor and considered to have a disability as contemplated by the Rehabilitation Act.

11. Carla Rolla is the natural mother of G.T. She represents her son G.T. in a representational capacity as (his) next friend ("a/n/f") and also has her own individual claims. They live together at 277 Koontz Loop, Jarrell, Texas, 76537.

12. Epic Health Services (hereinafter referred to as "the Defendant" or "Epic") is a corporation chartered by the State of Texas. It is qualified to do business in the State of Texas and in Travis and Williamson County, Texas. This Defendant may be served with process by serving its Registered Agent for service: Corporation Service Company D/B/A CSC-Lawyers Inco., 211 E. 7th Street, Suite 620, Austin, Texas 78701.

13. This Defendant is sued in all of its assumed, common or business names and notice is hereby given so that real parties in interest may appear and defend this action pursuant to Fed. R. Civ. P. 17.

### V. STATEMENT OF FACTS

A.   ABOUT G.T.

14. G.T. was born on July 4, 2003. His mother is Carla Rolla who has sole custody of her son. She and the young man's father were never married.

15. During the Spring of 2015 he was in the 5th Grade at the Union Hill Elementary with the Round Rock Independent School District. He was a normal active child at that time. He played basketball, liked karate, to use his skateboard and was a good runner.

16. He did have Attention Deficit Hyperactivity Disorder ("ADHD") and was prescribed Strattera to address his hyperactive behaviors. That being said, while he received Special

Education services he was in all regular education classes, had no behavioral problems at school, was loveable and had a good sense of humor and in fact, had excellent skills in math.

17. G.T. had a smartphone and would make and take phone calls.   He could easily Play Station 3 Console and like any other normal kid, played a lot of video games.

18. During this period, mother was able to work a normal employment schedule.

19. On March 21, 2015 both their lives changed forever.

B. ABOUT EPIC HEALTH SERVICES[1]

20. On their website Epic Health Services states that they provide both children and adults with the highest quality home health care.  They offer pediatric skilled nursing care, pediatric therapy, developmental and autism services, and enteral nutrition therapy.  In regard to adult care services, they offer a spectrum of superior home health care, intended to meet their patients' needs as well as improve their quality of life.

21. Epic Health Services states that they are available whenever a need for care arises. Further, Epic represented that no matter when it is called- day, night or on a holiday — a consumer will always reach a full-time staff member who can promptly respond to their specific needs. Further, Epic believes in providing the highest quality care delivered with extraordinary service.  They represent they will deliver on their mission through an outstanding team of clinicians and client service professionals who (they state) go above and beyond to create an environment of comfort, consistency, and normalcy for our patients and their families.

22. Epic writes that they consider it both a privilege and an honor when able to welcome a new patient into our Epic family. Moreover, as they state, their care is always delivered from a place of heartfelt compassion and empathy, and their clinical, operational and client relations teams work together in unique synergy to deliver care that exceeds expectations–care that a consumer can expect from those that care most about you–from family.

---

[1]. On March 16, 2017 PSA Healthcare ("PSA") and Epic Health Services announced their merger to form a newly named Aveanna Healthcare ("Aveanna").  It is headquartered in Atlanta, Georgia and is the largest pediatric home healthcare company in the nation.

C.   ABOUT EPIC PEDIATRIC HOME HEALTH SERVICES

23.   Epic Pediatric Therapy, is a division of Epic Health Services.  It provides a variety of therapy services that often serve as a critical component in the plan of care for children with injuries, disabilities, or developmental delays. They state that their licensed, experienced therapists provide specialized services in three areas including speech, occupational, and physical therapy and also offer certain, specialized programs.

24.   They further note that their staff is highly trained, and uses unique techniques to address each child's individual needs and help them reach their maximum potential.  Their services are intended to complement a child's therapy at school. Whether therapy needs are short- or long-term, they note that their therapists are committed to improving each child's quality of life and ability to be independent.

25.   Specifically, Epic writes that they also provides specialized pediatric services including Private duty skilled nursing home health care services, Speech-language therapy, Occupational therapy, Physical therapy, Medical nutrition therapy, Behavioral health and autism services.

D.   THE DUTIES OF AN ENTITY LICENSED TO PROVIDE HOME HEALTH SERVICES

26.   The Texas Department of Aging & Disability Services ("DADS") licenses, certifies and surveys home and community support services ("HCSSA") for compliance with state and federal laws and regulations.  Through these regulatory activities, DADS protects citizens receiving home health services.  In order for a business to be licensed and provide home health services to Texas, the entity must enroll in the Texas Medicaid Program, a program which received federal funding.

27.   Chapter 142 of the Texas Health & Safety Code provides DADS with the authority to adopt minimum standards that a person or entity must meet in order to be licensed as a HCSSA and qualified to provide certain home health services.

28.   DADs has promulgated a number of rules that were published in 40 Texas Administrative

Code ("T.A.C") at Chapter 97, delineating various licensure requirements.  It notes that a licensed entity, in receiving payments, whether pursuant to Medicaid at Title XIX of the Social Security Act ("SSA") or Medicare at Title XVIII of the SSA, will also have to satisfy related federal laws, rules and standards of care, also noted at Title 42 of the Code of Federal Regulations ("C.F.R."), Part 484.

29.    As an agency accepting federal monies, it must also follow, among other things, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and the Texas Nurse Practices Act and Texas Nursing Board rules and regulations promulgated thereunder.

30.    In addition, G.T. has a number of important patient and consumer rights as a recipient of home health services, pursuant to Chapter 48 of the Texas Human Resources Code; *see also* 40 T.A.C. §97.282 [Patient Rights](f)(5) [right to be treated with consideration, respect and full recognition of the client's individuality and personal needs] and (f)(6)[right to be free from abuse, neglect and exploitation].  A violation of such rights provides G.T. a private cause of action under state law as well, pursuant to Texas Health & Safety Code §121.004.

E.    ABOUT BEN STATES OLIVER

31.    Oliver received an Associate's Degree in Nursing from Austin Community College in 2010 and was licensed to practice vocational nursing shortly thereafter.   He worked for Epic Health Care from December of 2014 until, approximately, October of 2016.  He was G.T.'s LVN for home-based services.

32.    Upon reason and belief Plaintiffs allege there is nothing in his educational background that evidences Oliver was trained to provide services to a person like G.T.

33.    Upon reason and belief Plaintiffs allege there is nothing in his prior employment background that evidences Oliver was trained to provide services to a person like G.T.

34.    Upon reason and belief Plaintiffs allege there is nothing in his employment record with Epic Health Services that evidences Oliver was trained to provide services to a person like G.T.

F.     G.T. HAS A MASSIVE STROKE

35.    On or about March 21, 2015, when he was eleven (11) years G.T. woke in the morning like any other, except he had a headache. He started behaving abnormally and would repeatedly run into a wall. His mother called *Emergency Medical Services* ("EMS"). By the time EMS arrived he was unresponsive and a 3 on the Glasgow Coma Scale ("GCS").[2] He was brought to the Dell's Children Hospital and was found to have a large posterior fossa hemorrhage and intraventricular hemorrhage. He was admitted to the *Pediatric Intensive Care Unit* ("PICU") where he stayed until June 3rd, when he was transferred to their inpatient rehabilitation unit.

36.    While there, among other things, he lost his ability to walk and needs a wheelchair at this time. He no longer can eat on his own and requires what is known as "G-Tube" for all nourishment and liquids. In addition, while hospitalized G.T. required a Tracheostomy and now requires a "Tracheostomy Tube" for all breathing purposes.

37.    Importantly G.T. also lost the ability to speak. At first he could barely move his arms to assist in even simple communications using picture cards. Not surprisingly G.T. became very frustrated due to his inability to communicate (well) and would flail his arms and even strike out at people who were trying to help him, especially when touching his G-Tube or Tracheostomy Tube.

38.    Mother reports that while she was at the hospital staff did train her in how to deal with her son's behavioral issues, when frustrated.

39.    He was discharged from the hospital on August 4th.

G.     G.T.'s CURRENT HEALTH NEEDS THE CAUSE

40.    He currently has a number of medical problems, including but not limited to a ruptured cerebral ateriovenous malformation, Hemiplegia, Tetraparesis, Tetraplegia, Conjunctivitis,

_____

[2].  GCS is a neurological scale intended to provide a reliable and objective way of recording the conscious state of a person for initial as well as subsequent assessment. 3 indicates deep unconsciousness and 14/15 at the highest stage of awareness.

dysphagia, insomnia, anxiety and abnormal weight loss.

41.     Because of his multiple and seriously disabling conditions he can't be left unattended, requires significant "fall precautions" and needs to be properly positioned at all times, especially during meals. In regard to meals, G.T. requires specialized feeding equipment, a feeding formula and a specialized feeding pump.

42.     He has no individual mobility skills and needs to be transported in a wheelchair. He has trouble breathing and must have immediate availability of oxygen equipment, nebulizer equipment, portable suction equipment, suction catheters, Tracheostomy equipment and syringes.

43.     Not surprisingly G.T. has a number of functional limitations including but not limited to bowel and bladder incontinence, endurance, communication problems, problems with gross motor skills, is non-ambulatory, non-verbal, has respiratory problems and is wheelchair bound. In regard to all the above he receives occupational therapy, physical theraP, speech therapy and supervision at all times.

44.     His need for personal and specialized medical and nursing attention is significant. In fact, when he has his behavioral outbursts, once again, arms flailing, pushing people away and generally being oppositional, usually when having his G-Tube or Tracheotomy Tube changed, his needs go beyond the usual health care provider and patient interaction and require an assessment by a professional trained to address such behavioral concerns.

45.     In fact, Ms. Rolla reports that many of the LVN's or Aides sent out by the Defendant to take care of G.T. had to leave because they admitted they were not trained to deal with a child like G.T. Mother spoke with Epic a number of time about this problem but they failed to have G.T. assessed by the appropriate behavioral specialist to address these concerns.

46.     In fact, this problem occurred so often that mother was called at work by the LVN, Aide or Defendant to leave work and come home to take care of her son, because they could not. Eventually she had to stop working because of their failure to have trained staff in

attendance for her son.

47. Nevertheless, neither Epic Health Services nor Epic Home Health Services nor their Pediatric Division ever provided G.T. a needed behavioral assessment, even though it was desperately and obviously needed.

48. This failure turned out to have horrific effects.

H.   THE INCIDENT GIVING RISE TO THIS LAWSUIT

49. On or about May 13, 2016 G.T. was at home when an employee of Defendant, Ben States Oliver, was the LVN chosen to attend to G.T.'s needs. Like many of the others before him he was ill equipped to deal with any behavioral outbursts or oppositional behaviors that G.T. would manifest.

50. On that day, like many others, Oliver reported that G.T. became combative when he attempted to change an HME (Heat and Moisture Exchanger) device which is used for mechanically ventilated persons, like G.T. Oliver further reports that G.T. began to flail in his electronic wheelchair, grabbed at Oliver and also at his tracheotomy. Oliver also has stated that he was able to remove the HME despite G.T.'s combativeness but that when he tried to replace the HME, G.T. resumed resistance, arms flailing, covering his neck with his hand, swinging his arms and pulling at the tracheotomy.

51. There is a video of the interaction which shows that Oliver, obviously in great frustration, flicked at G.T. as he was walking away and hit G.T. in the eye. Sadly, G.T. reacted like a wounded animal.

52. Upon reason and belief, Plaintiffs allege that if Defendant had provided G.T. an assessment from the appropriate Behavioral Specialist and that person had developed an appropriate Behavioral Management Plan ("BMP") for G.T. this incident would likely had been avoided.

53. Upon reason and belief, Plaintiffs allege that Oliver was not sufficiently educated to work with G.T.

54. Based upon the acts and omissions of Oliver, Plaintiffs allege that Oliver was not correctly

trained by Defendant to work with G.T.

55.   Such acts, omissions and failures by Epic Health Services caused injuries to G.T. He is scared of persons sent to help him and is reticent to engage with persons he is not familiar with. He is even more short-tempered than before. He has chased away almost all of the current home health care workers because of his fear and distrust.

56.   Even after the incident Defendant still failed to retain a Behavioral Specialist even though there website specifically states they offer such services.

57.   Epic Health Services had a contract with the State of Texas to provide specific type of services to G.T. They failed to do so. G.T. was a 3rd Party Beneficiary of such contractual agreement and is thus able to bring a cause of action against Epic Health Services accordingly.

## VI.  **VIOLATION OF THE REHABILITATION ACT OF 1973**

58.   Plaintiffs incorporate and re-allege the above-referenced allegations as though set forth at length herein. In addition, each portion below likewise will incorporate by reference any such allegation above it, also as though set forth at length therein.

59.   Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and its implementing regulations require that any program or activity receiving Federal financial assistance may not discriminate against an otherwise qualified individual with a disability. Programs or activities covered by Section 504 include corporations or private organizations principally engaged in the business of providing healthcare, 29 U.S.C. § 794(b)(3). Under the ADA Amendment's Act, the definition of a disability for purposes of the Rehabilitation Act of 1973 conforms to the definitions of disability under the ADA, 29 U.S.C. § 705(20)(B).

60.   The Defendant is a corporation which is principally engaged in the business of healthcare as defined by 29 U.S.C. §794, and as such, may not discriminate against a person because of their disability who is protected by Section 504.

61.   The facts as previously described identify G.T. is a qualified individual with a disability.

62.    The facts as previously described demonstrate violations of Section 504 of the Rehabilitation Act, 29 U.S.C. §794 by the Defendant against G.T. as discrimination based upon disability.

63.    The facts as previously described demonstrate violations of the regulations promulgated pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. §794 by the Defendant against G.T.

64.    Such acts, omissions and failures by the Defendant caused injuries to G.T.

## VII.   NEGLIGENCE BY EPIC PEDIATRIC HOME HEALTH

A.    MEDICAL NEGLIGENCE

65.    Plaintiffs allege that this Defendant was negligent in their capacity as a health care provider when providing health care to G.T., such failure a violation of the relevant professional standards for a reasonable and prudent home health services operating in Travis and Williamson County, Texas.

B.    NEGLIGENCE PER SE

66.    In addition and in the alternative to the above, Plaintiffs allege that the Defendant, acting by and through its directors, officers, employees and agents, and contract services, violated the State Law of Texas, as contemplated by rules and regulations promulgated thereunder, and considered "Negligence Per Se" creating a private cause of action thereby.

## VIII.   DECEPTIVE TRADE PRACTICES

67.    In addition and in the alternative to the above, Plaintiffs set forth this claim for that the Defendant engaged in deceptive business practice in regard to the services provided by this Defendant as contemplated by the Texas Deceptive Trade Practices Act, Chapter 17, Texas Business & Commerce Code ("DTPA").

68.    G.T. was a consumer.

69.    This Defendant can be sued under the DTPA

70.    The Defendant advertised that they provided a specific type of program and they did not provide such a program.

*Plaintiffs' Original Complaint*                                                                                    11

71.    The Defendant advertised that they provided a specific type of services but they did not provide such services.

72.    The Defendant's actions were a producing cause of Plaintiff's damages.

## IX. **BREACH OF CONTRACT**

73.    As noted above Epic Health Services had a contract with the State of Texas to provide specific type of services to consumers G.T.

74.    They failed to follow relevant state law, state rules, Medicaid standards and Medicare standards, all as required by their contract with the State of Texas.

75.    Also as noted above, G.T. was a 3rd Party Beneficiary of such contractual agreement and as such is able to bring a cause of action against Epic Health Services for breach of contract claims accordingly.

## X. **PROXIMATE CAUSE**

76.    Plaintiffs incorporate by reference all allegations in the above related paragraphs with the same force and effect as if herein set forth. Each and every, all and singular of the foregoing acts and omissions, on the part of the Defendants taken separately and/or collectively, or jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XI. **RATIFICATION**

77.    The Defendant ratified the acts, omissions and customs of all their administrators, personnel, professional and non-professional and staff. As a result, this Defendant is responsible for the acts and omissions of all those persons thereby. This Defendant is further liable for the negligent acts and omissions of its employees, contractors and agents, under the doctrine of Respondeat Superior.

## XII. **DAMAGES**

78.    Plaintiffs incorporate by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

79.  As a direct and proximate result of the Defendants' conduct, Plaintiffs have suffered injuries and damages, which he may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to the following for G.T.:

80.  Physical pain and suffering for G.T;

81.  Past Mental anguish for G.T.;

82.  Past medical expenses for G.T.;

83.  Disfigurement of G.T.;

84.  Loss of Enjoyment for G.T.;

85.  Future mental health costs to G.T. and

86.  Out-of pocket costs by his mother.

87.  As a direct and proximate result of the Defendants' conduct, Ms. Rolla has suffered injuries and damages, which she may seek compensation thereby, all within the jurisdictional limits of this court, including but not limited to loss of income.

88.  By reason of the above, the subject of this lawsuit, Plaintiffs have suffered losses and damages in a sum within the jurisdictional limits of the Court and for which this lawsuit is brought.

## XIII.  **EXEMPLARY DAMAGES**

89.  Plaintiffs incorporate by reference all of the above related paragraphs, as well as those below, with the same force and effect as if fully set forth herein.

90.  Further, that the above-described conduct of each and any Defendant was willful and malicious as such failures were a gross deviation from professional standards of care.

91.  As a result, the Plaintiff are entitled to recover exemplary damages to deter such cruel and improper conduct in the future.  Defendants actions caused G.T., and by extension his family, suffering of immeasurable dimensions, as well as significant expenses, including those enumerated above, and attorneys' fees incurred in the investigation and prosecution of this action.  Accordingly, Plaintiffs requests that exemplary damages be awarded against

Defendant, in a sum sufficient to deter similar future actions by them and those similarly situated.

## XIV.  ATTORNEYS FEES AND COSTS

92.     It was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff are entitled to an award of attorney fees and costs pursuant to the Rehabilitation Act and 42 U.S.C. §2000d et seq., the Texas Deceptive Trade Practices Act and Chapter 38 of the Texas Civil Practices & Remedies Code.

## XV.  DEMAND FOR A JURY TRIAL

93.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable of right by a jury pursuant to his rights as guaranteed by the Seventh Amendment to the United States Constitution and by corresponding provisions of state law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray in the manner and particulars noted above, and in an amount sufficient to fully compensate the defendants for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to the Rehabilitation Act and the Texas Deceptive Trade Practices Act, and with pre- and post-judgment interest, and court costs expended herein and for such other further relief as the Court may deem just and proper in law or in equity.

Respectfully submitted,

Winckler & Harvey, L.L.P.
4407 Bee Cave Road, Bldg. 2, Suite 222
Austin, Texas 78746
(512) 306-1800
Fax: (512) 306-9442

By: _____

Jay Winckler, Esq.
Jwinckler@wincklerharvey.com
State Bar No. 21754400

and

Mr. Martin J. Cirkiel, Esq.
State Bar No.: 00783829
Cirkiel & Associates, P.C
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkiclaw.com [Email]

**ATTORNEYS FOR PLAINTIFFS**